**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**GEORGE KINNARD,**

      **Plaintiff,**

**v.**                                        **Case No. 8:09-cv-628-T-24AEP**

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion for Remand Pursuant to Sentence Six of 42 U.S.C. § 405(g). (Dkt. No. 15.) In support of his Motion for Remand Plaintiff submitted a September 15, 2008, report from Dr. Spuza-Milord; (2) an October 29, 2009, treatment note from Dr. Spuza-Milord; (3) an October 29, 2009, checklist response from Dr. Spuza-Milord stating Plaintiff has been disabled since January 2004; and (4) medical records from a November 2009 hospitalization for coronary by-pass surgery. (Dkt. No. 15, Exs. 1-5; Dkt. No. 16, Ex. 2.) Defendant filed an Opposition to Plaintiff's Motion for Remand (Dkt. No. 17). For the reasons set out herein, the undersigned recommends that the Motion for Remand be **DENIED**.[1]

---

[1] Plaintiff's Motion for Remand was referred to the undersigned by the Honorable Susan C. Bucklew (Dkt. No. 15).

**I.** *<u>Factual Background</u>*

Plaintiff was forty-seven years of age at the time of his last administrative hearing on March 27, 2008. (Tr. 760.) He stands 5' 10" tall and weighs approximately 190 pounds. (Tr. 665, 686.) Plaintiff has a ninth-grade education and is able to communicate in English. (Tr. 93, 99.) His past relevant work includes working as a short-order cook, construction worker, welder, and animal trainer. (Tr. 125, 566.)

Plaintiff first applied for disability benefits and Supplemental Security Income payments on January 21, 2004, alleging disability as of June 30, 2002, by reason of severe back and neck pain, headaches, anxiety, paranoid-schizophrenia, and alcohol abuse. (Tr. 15, 93.) The application was denied originally and on reconsideration. (Tr. 64, 68.) Plaintiff appealed the decision to an Administrative Law Judge ("ALJ"). (Tr. 72.) The ALJ held an administrative hearing on September 8, 2005, and took testimony from Plaintiff and a vocational expert. (Tr. 680-715.) The ALJ rendered an unfavorable decision on October 27, 2005. (Tr. 15, 378-392.) Plaintiff then appealed the ALJ's decision to the Appeals Council who vacated the decision on multiple grounds on February 2, 2007. (Tr. 15, 393.)

During the appeal process, Plaintiff filed a second application for disability benefits and Supplemental Security Income payments on August 16, 2006, again alleging disability as of June 30, 2002. (Tr. 15, 181.) The second application was denied originally and on reconsideration. (Tr. 185, 191, 194, 449, 454.) Because the claims from the second application were duplicative of the first application, the ALJ consolidated the claims after the Appeals Council remanded the first application. (Tr. 15.)

On remand, the ALJ held a hearing on January 23, 2008, and a supplemental hearing on March 27, 2008. (Tr. 716-792.) The ALJ took testimony from Plaintiff, two medical experts, and a vocational expert. (*See id.*) Plaintiff was represented by counsel at each hearing. (Tr. 716, 760.) During the 2005 and 2008 hearings Plaintiff testified that he was unable to work due to severe back, neck, and shoulder pain which arose from an auto accident in 2001, and that he had difficulty holding onto things. (Tr. 697, 698, 720.) Plaintiff further stated he suffers from depression and anxiety, has difficulty sleeping, and has thoughts of suicide one to two times a week. (Tr. 703, 722, 727, 729.)

The first medical expert, Dr. Alfred Jonas, opined on Plaintiff's mental health condition. (Tr. 733-758.) The second medical expert, Dr. John Axline, opined on Plaintiff's physical condition. (Tr. 763-778.) Finally, the ALJ also took testimony from Jeffrey Carlisle, a vocational expert. (Tr. 781-792.)

Before the ALJ were medical records outlining the Plaintiff's medical history. By his decision of April 24, 2008, the ALJ determined that Plaintiff suffered from severe impairments of lumbar and cervical degenerative disc disease, tension headaches, right shoulder strain, angina, depression, alcohol dependence, and cannabis dependence. (Tr. 18.) Despite these impairments the ALJ found in view of the record before him that Plaintiff had the residual functional capacity to perform "sedentary work," reduced by numerous limitations. (Tr. 18, 19, 27.) Upon this finding, the ALJ concluded that Plaintiff could not perform his past relevant work. (Tr. 26.) But the ALJ found a significant number of jobs were available to Plaintiff in the local and national economy considering his age, education, work experience, and residual functional capacity, based upon a hypothetical posed to the

vocational expert, Dr. Carlisle. (Tr. 27.) Therefore, the ALJ found the Plaintiff not disabled. (Tr. 27-28.)

The Appeals Council denied Plaintiff's request for review (Tr. 7) and Plaintiff subsequently filed this action (Dkt. No. 1). Plaintiff filed the instant Motion for Remand Pursuant to Sentence Six of 42 U.S.C. § 405(g) asserting that this case should be remanded to the Commissioner in light of new evidence obtained after the ALJ's decision, which was not presented at the administrative level . (Dkt. No. 15.) The Commissioner opposes the Motion for Remand, contending that the evidence is not material and therefore would not change the administrative result. (Dkt. No. 17.)

## II.  *Standard of Review*

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id*. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 1035 (2005). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health &*

*Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

Under sentence six of 42 U.S.C. § 405(g), a court may remand a case to the Commissioner "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). By this standard, to demonstrate that a remand for consideration of new evidence is appropriate, the Plaintiff must demonstrate that: (1) there is new, non-cumulative evidence; (2) the evidence is material, i.e., relevant and probative such that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the applicant's failure to submit the evidence at the appropriate administrative level. *See Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

### III.  *Discussion and Analysis*

Upon careful consideration of the evidence presented, the Court concludes that while the evidence submitted may be new, it is not material, and Plaintiff has failed to show good cause for the late submission of Dr. Spuza-Milord's evaluation of September 15, 2008, and her checklist response of October 29, 2009.[2] Therefore, for the reasons discussed below, a remand is not warranted.

---

[2] The Court treats the October 29, 2009, checklist response and the October 29, 2009, progress note (opining that Plaintiff remains 100% medically disabled) as one in its analysis below.

### A. Whether the Evidence Is "New."

A sentence six remand is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267 (11th Cir. 2007). The Court finds that the evidence submitted by Plaintiff is new because it was not considered by the ALJ or the Appeals Council and is generally non-cumulative.[3] Specifically, Dr. Spuza-Milord's evaluation of September 15, 2008, contains a diagnoses of osteoarthritis, a condition not previously diagnosed by Plaintiff's treating physicians. (Dkt. No. 15, Ex. 2.) Dr. Spuza-Milord's responses to the checklist questionnaire provided by Plaintiff's attorney, and a progress note, each dated October 29, 2009, also arguably support Plaintiff's allegations of disablement. (Dkt. No. 15, Ex. 4.) Finally, the medical records reflecting Plaintiff's hospitalization for heart surgery are new as Plaintiff had never received surgery for his alleged heart condition. (Dkt. No. 15, Ex. 5.)

### B. Whether Plaintiff Has Shown "Good Cause."

The ALJ rendered his decision denying Plaintiff disability benefits and Supplemental Security Income on April 24, 2008. (Tr. 28.) Dr. Spuza-Milord's report, addressed to Plaintiff's attorney, is dated September 15, 2008. (Dkt. No. 15, Ex. 2.) The Appeals Council

---

[3] The Court recognizes some courts have found evidence not to be "new" when that evidence was *available* to the claimant at the time of the administrative proceedings. *See Nason v. Astrue*, No. 3:08cv427, 2009 WL 3087309, at *12-13 (N.D. Fla. Sept. 23, 2009). The Court finds that although Dr. Spuza-Milord's report was available to Plaintiff before the Appeals Council's decision, Plaintiff's failure to submit the report is better addressed under the "good cause" requirement.

6

decision denying review of the ALJ's decision is dated February 3, 2009. (Tr. 7.) Therefore, there was a period of over four months in which Plaintiff could have submitted Dr. Spuza-Milord's report. The good cause requirement is satisfied when the evidence did not exist at the time of the administrative proceedings. *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Milano v. Bowen*, 809 F.2d 763, 767 (11th Cir.1987). The good cause requirement was designed to prevent claimants from attempting to withhold evidence with the idea of 'obtaining another bite of the apple' if the Commissioner decided that the claimant was not disabled. *Milano*, 809 F.2d at 767 (citations omitted). Additionally, it was designed to avoid the danger of encouraging claimants to seek after-acquired evidence who might use such evidence as an unsanctioned 'backdoor' means of appeal. *Id.*

Plaintiff's counsel admits that he did not send in the report prior to the Appeals Council decision although it was in his possession. Plaintiff's counsel represents that he had requested a copy of Plaintiff's file and a copy of the record along with a request for an extension of time to prepare his appeal, but that the Appeals Council "on their own went ahead and issued a decision without sending such material" to him, nor did they allow him to submit additional material to the Appeals Council. (*See* Dkt. No. 15 ¶ 3; Dkt. No. 16, Ex. 1.) First, it is not clear to the Court when Plaintiff's counsel sent his request, as the letter sent to the Appeals Council has no date and Plaintiff provides none in his Motion for Remand. Second, even assuming such a request was sent in a timely manner, the Appeals Council never prevented Plaintiff from submitting Dr. Spuza-Milord's report. Plaintiff had over four months to send in the report with a brief explanation of its materiality to ensure its

7

consideration by the Appeals Council before submitting his memorandum.[4] Instead, Plaintiff chose to hold onto the report. Thus, Plaintiff's contention that the Appeals Council did not allow him to submit additional materials is without merit. Because Plaintiff fails to provide good cause for not submitting Dr. Spuza-Milord's September 15, 2008, report to the Appeals Council, the Court finds that a remand is not warranted based on that report.

Additionally, the Court finds that Plaintiff has failed to show good cause for the late submission of the October 29, 2009, checklist from Dr. Spuza-Milord stating Plaintiff has been disabled since January 2004. (Dkt. No. 16, Ex. 2.) In a letter dated October 5, 2009, counsel for Plaintiff wrote Dr. Spuza-Milord asking her whether, based upon the medical history given to her and her examination of September 15, 2008,[5] she would have felt the restrictions and limitations she had placed upon Plaintiff would have been true since January 2004 to the present. (Dkt. No. 16, Ex. 2.) Dr. Spuza-Milord indicated, by checking two boxes, that the limitations and restrictions she placed on Plaintiff implying he could not work, would have been true since January 2004 to the present. (*Id.*) The only reason Plaintiff offers for the late submission of this evidence is that he requested it in response to Defendant's unwillingness to remand this case to the Commissioner. (Dkt. No. 15 ¶¶ 4-5.) Nothing

---

[4] The Appeals Council will consider all the evidence in the administrative law judge hearing record *as well as any new and material evidence submitted to it* which relates to the period on or before the date of the administrative law judge hearing decision. 20 C.F.R. § 404.976(b)(1) (emphasis added).

[5] While the letter does not specify the date of the examination, it is clear to the Court from the context of the letter, use of past tense, and references to the restrictions and limitations placed upon Plaintiff, that counsel for Plaintiff is referring to the September 15, 2008 examination.

8

prevented Plaintiff from securing this evidence when Plaintiff was examined on September 15, 2008.[6] It is clear to the Court that Plaintiff only sought this evidence after the Commissioner refused to remand the case. The Court finds this is a classic case of a claimant attempting to seek after-acquired evidence as an unsanctioned 'backdoor' means of appeal. *Milano*, 809 F.2d at 767. Therefore, the Court finds Plaintiff failed to provide good cause for the late submission of the 29, 2009, checklist from Dr. Spuza-Milord.

Finally, the Court finds that Plaintiff has shown good cause for the submission of the medical records reflecting Plaintiff's hospitalization for heart surgery. That evidence was clearly not available during the administrative proceedings and was not sought out as a 'backdoor' means of appeal.

### C. Whether the Evidence is "Material."

The Court next addresses whether the "new" evidence offered by Plaintiff is material. Even though the Court has found good cause does not exist to remand this case as to Dr. Spuza-Milord's September 15, 2008, report and her October 29, 2009, checklist response, the Court will determine whether that evidence satisfies the "materiality" prong as well. To be material, the evidence must relate back to the original alleged onset date of disability, or at least must relate to the disabilities litigated administratively. *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988). In other words, the evidence must be relevant

---

[6] Indeed, the Court notes that counsel for Plaintiff obtained similar evidence during the administrative process from Dr. Greenfield after the ALJ's first decision denying benefits and submitted that evidence to the Appeals Council. (*See* Tr. 403-422, 430, 431.) The Court is also aware that the evidence was obtained after receiving an extension of time from the Appeals Council, but that fact is of no moment as here Plaintiff had the evidence in hand prior to the Appeals Council's decision.

9

to a condition existing prior to the final decision by the Appeals Council. *See Austin v. Astrue*, No. 5:07cv52, 2008 WL 2385520, at *15 (N.D. Fla. June 9, 2008) (*citing Thomas v. Sullivan*, 928 F.2d 255, 260-61 (8th Cir. 1991)).

### 1. Materiality of the Records Regarding Plaintiff's Hospitalization for Heart Surgery from November 2009.

The Court finds that the medical records reflecting Plaintiff's hospitalization for heart surgery are not material. There is no reasonable possibility that this new evidence would change the administrative outcome, the test for materiality. *See Falge v. Apfel*, 150 F.3d at 1323. Plaintiff appeared at the North Bay Hospital with unstable angina on November 4, 2009. (Dkt. No. 15, Ex. 5.) Plaintiff "underwent a cardiac catheterization that showed a critical greater than 95% LAD stenosis[7] with moderate 60% to 70% right coronary artery stenosis and reduced ejection fraction of 35% to 40%." (*Id.*) After being transferred to Morton Plant Hospital, Plaintiff received a coronary bypass. (*Id.*) Plaintiff tolerated the procedure well, had no complications or setbacks, and was released on November 9, 2009. (*Id.*) Finally, the records indicate that Plaintiff had an "old inferior wall myocardial infarction which was without change." (*Id.*)

Plaintiff speculates that the new medical records indicate he had suffered a heart attack at the time of the second ALJ hearing, and "that his physical condition was greater than that which had been described by Dr. Greenfield or any other physician." (Dkt. No. 15 at 6.) The Court cannot agree with Plaintiff on this point. The new medical records suggest a prior heart attack, but there is no evidence indicating that the heart attack was recent or how it

---

[7] Left Anterior Descending artery stenosis.

might have affected Plaintiff's ability to work during the relevant time period. While Plaintiff suggested during the second hearing that a physician wanted to perform a cardiac catheterization, the ALJ correctly pointed out that the record lacked documentation verifying this assertion and there was no further follow-up with a cardiologist. (Tr. 18.) Simply put, the new evidence presented does not confirm that Plaintiff suffered from a continuing cardiac impairment or any additional limitation of function due to cardiac symptoms not already accounted for by the ALJ, during the relevant time period — i.e., before the Appeals Council denied review on February 3, 2009.

At the administrative level, Plaintiff submitted evidence which indicated that he suffered from angina, took nitroglycerin, and that his heart condition affected his ability to work. (Tr. 656-57.) Plaintiff also submitted the results of an abnormal stress study conducted on December 4, 2007, which was terminated due to chest pain and ST segment abnormalities. (Tr. 658.) Plaintiff also complained of chest pain in 2003, but an examination ruled out myocardial infarction and stress testing was negative. (Tr. 20, 213-220.)[8] Further, as the ALJ noted, treatment notes by Dr. Greenfield consistently reflected that Plaintiff denied chest pain or shortness of breath through October 2007. (Tr. 22, 661, 664, 668, 668, 674, 677.)[9] The ALJ additionally noted that there was no subsequent medical evidence to confirm the

---

[8] The Court further notes the records from 2003 also indicate an "old inferior wall myocardial infarction" (Tr. 218), which is the same assessment as found in the November 2009 records, and would contradict Plaintiff's assertion that he suffered a heart attack in December 2007.

[9] Moreover, Dr. Spuza-Milord's progress note of October 29, 2009, indicates that Plaintiff continued to deny chest pain or shortness of breath. (Dkt. No. 15, Ex. 4.)

11

presence of any continuing cardiac impairment. (Tr. 22.) The ALJ did find that Plaintiff suffered from the severe impairment of angina, which he considered when he arrived at Plaintiff's residual functional capacity. (Tr. 18-19.) Based on this record, the Court finds that Plaintiff's medical treatment in November 2009 for his heart, nearly two years after his complaint of chest pain in December 2007, is not material because there is not a reasonable possibility that the administrative result would change if it were allowed to be considered on remand. *Cf. Thomas v. Sullivan*, 928 F.2d 255, 260-61 (8th Cir. 1991) (finding evidence relating to heart attack did not relate to claimant's condition as it existed before the ALJ's decision which was rendered 14 months earlier).

### 2. Materiality of Dr. Spuza-Milord's Records.

The Court also finds that the medical records from Dr. Spuza-Milord are not material. With respect to Dr. Spuza-Milord's report of September 15, 2008, and her checklist response of October 29, 2009, the Court finds there is not a reasonable possibility that these documents would change the administrative outcome. First, the Court notes that Dr. Spuza-Milord is essentially a one-time consultative examiner and her opinion would not be entitled to the same deference as a treating source. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (finding opinion of doctor who examined claimant on only one occasion not entitled to great weight); 20 C.F.R. §§ 404.1527(d)(I), 416.927(d)(i). Second, Dr. Spuza-Milord's opinion that Plaintiff was totally disabled and was unable to engage in work since January 2004, is an opinion on an issue reserved to the Commissioner because it is a finding that would be dispositive of the case. *See* 20 C.F.R. § 404.1527(e). While that opinion could not be disregarded, it would not entitled to controlling weight or given special

12

significance. *See* SSR 96-5p; 20 C.F.R. § 404.1527(e). Finally, the evaluation and recently submitted checklist response by Dr. Spuza-Milord would not change the outcome in light of the substantial weight of evidence relied on by the ALJ. After conducting a detailed five-step sequential analysis under 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920, the ALJ concluded that Plaintiff was not disabled prior to his decision. As detailed in his decision, the ALJ assigned considerable weight to the opinion of the medical expert Dr. Axline, while he discounted the opinion of Plaintiff's treating physician, Dr. Greenfield. (Tr. 24-26.) Dr. Axline opined that Plaintiff could: (1) lift 20 pounds occasionally and 10 pounds frequently; (2) walk for 6 out of 8 hours per day, stand for one out of 8hours per day, and sit for 6 out of 8 hours per day; and (3) continuously reach, handle, finger, feel, push, and pull with the upper extremities. (Tr. 25, 769-772.) Contrarily, Dr. Greenfield opined that Plaintiff could: (1) lift 10 pounds for 15 minutes per day; (2) walk/stand for 3 minutes without interruption and sit for 1-2 hours; and (3) restricted Plaintiff's ability to reach and feel using his hands and arms. (Tr. 23-24, 332-333, 430-431.) The ALJ found Dr. Axline's opinion to be well supported and consistent with the medical record as a whole, while he found Dr. Greenfield's opinion to be inconsistent and not supported by the medical record. (Tr. 24, 25.) The ALJ's conclusion was not based solely on the opinion of Dr. Axline. The ALJ also found that Plaintiff was not entirely credible. (Tr. 23.) The ALJ noted that Plaintiff worked after the alleged onset of June 2002, performed activities of daily living, was non-compliant with medical treatment, and abused alcohol and illegal drugs while denying such abuse to his treating physician. (Tr. 23.)

Here, Dr. Spuza-Milord's report of September 15, 2008, suggests that Plaintiff suffered from diffuse osteoarthritis, but tested negative for systemic inflammation and rheumatoid arthritis or endocrine related arthritis. (Dkt. No. 15, Ex. 2.) Dr. Spuza-Milord opined that Plaintiff was medically disabled due to, *inter alia*, cervical spondylosis with degenerative disc disease of the lower cervical spine, lumbar spondylosis with moderate severe degenerative disc disease, and right shoulder impingement with rotator cuff dysfunction. (*Id.*) Each of these impairments were found to be severe by the ALJ. (Tr. 18.)

Dr. Spuza-Milord's October 29, 2009, checklist responses opining that Plaintiff has been disabled since January 2004 relates back nearly six years, as opposed to the opinion of Dr. Axline who provided his opinion concerning Plaintiff during the relevant time period. Although Dr. Spuza-Milord's evaluation of September 15, 2008, is within the relevant time-frame, the opinions within that evaluation are quite similar to that of Dr. Greenfield — an opinion that was given little weight by the ALJ in view of the record before him. Additionally, most of the impairments described by Dr. Spuza-Milord were considered by the ALJ at the administrative level and were accounted for in arriving at Plaintiff's RFC. The additional diagnosis by Dr. Spuza-Milord of diffuse osteoarthritis, without more, does not provide the Court with a sufficient basis to remand the case to the ALJ. The ALJ took into account Plaintiff's headaches and complaints of pain, limited range of motion, difficulty sleeping, and tenderness and spasm in the neck and back. (*See* Tr. 20.) The ALJ found however, that Plaintiff's symptoms were not as severe as complained of—for example, he noted during examinations in March 2004 and November 2006, Plaintiff had a normal gait, squat, negative straight leg raises, no motor or sensory deficits, and a full range of motion and

14

normal strength in the extremities. (Tr. 20, 235, 236, 571.) Additionally, Dr. Greenfield's examination in November 2006 revealed that Plaintiff had no problem with grip and fine manipulation, which was contrary to his July 2006 checklist opinion (and Dr. Spuza-Milord's October 29, 2009, checklist opinion).[10] (Tr. 430, 571; Dkt. No. 16, Ex. 2.) Therefore, as argued by the Commissioner, the Court agrees that Dr. Spuza-Milord's report and checklist responses which opine that Plaintiff has been disabled since January 2004, are inconsistent with the medical evidence of record in much the same way that Dr. Greenfield's opinions were found to be inconsistent by the ALJ. Consequently, the Court finds that Dr. Spuza-Milord's evaluation of September 15, 2008, and checklist responses of October 29, 2009 would similarly be afforded little weight in light of the other evidence of record recited by the ALJ, and cannot be held to provide a reasonable possibility of a different outcome. *Cf. Goff v. Comm'r of Soc. Sec.*, 253 Fed. Appx. 918, 922 (11th Cir. 2007) (denying remand to consider seven-item checklist response form submitted one year after the Appeals Council's decision).

---

[10] Additionally, the Court would note that Dr. Spuza-Milord's opinions are somewhat inconsistent with the sole progress note before the Court from her office, dated October 29, 2009, in that Plaintiff did not complain of shortness of breath, chest pains, or sleep disturbance. (Dkt. No. 15, Ex. 4.)

**IV.**

For the foregoing reasons, it is **RECOMMENDED** Plaintiff's Motion for Remand Pursuant to Sentence Six of 42 U.S.C. § 405(g) (Dkt. No. 15) be **DENIED**.

**IT IS SO REPORTED** at Tampa, Florida, this 6th day of April, 2010.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

**Copies furnished to:**

Honorable Susan C. Bucklew

Counsel of Record