**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**GEORGE KINNARD,**

                **Plaintiff,**

**v.**                                                    **Case No.  8:09-cv-628-T-24AEP**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

                **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

        Plaintiff in this case seeks judicial review of the denial of his claims for Social Security

disability benefits and Supplemental Security Income payments.[1]  For the reasons set out herein,

I recommend that the decision be affirmed.

**I.**

        Plaintiff was forty-seven years of age at the time of his last administrative hearing on

March 27, 2008.  (Tr. 760.)  He stands 5' 10" tall and weighs approximately 190 pounds.  (Tr.

665, 686.) Plaintiff has a ninth-grade education and is able to communicate in English.  (Tr. 93,

99.) His past relevant work includes working as a short-order cook, construction worker, welder,

and animal trainer.  (Tr. 125, 566.)

        Plaintiff first applied for disability benefits and Supplemental Security Income payments

on January 21, 2004, alleging disability as of June 30, 2002, by reason of severe back and neck

_____

        [1]  This matter comes before the undersigned pursuant to the Standing Order of this
Court dated April 7, 2009.  (Dkt. No. 2.)  *See also* Local Rule 6.01(c)(21).

pain, headaches, anxiety, paranoid-schizophrenia, and alcohol abuse.  (Tr. 15, 93.)  The application was denied originally and on reconsideration.  (Tr. 64, 68.)  Plaintiff appealed the decision to an Administrative Law Judge ("ALJ").  (Tr. 72.)  The ALJ held an administrative hearing on September 8, 2005, and took testimony from Plaintiff and a vocational expert.  (Tr. 680-715.)  The ALJ rendered an unfavorable decision on October 27, 2005.  (Tr. 15, 378-392.)  Plaintiff then appealed the ALJ's decision to the Appeals Council who vacated the decision on multiple grounds on February 2, 2007.  (Tr. 15, 393.)

During the appeal process, Plaintiff filed a second application for disability benefits and Supplemental Security Income payments on August 16, 2006, again alleging disability as of June 30, 2002.  (Tr. 15, 181.)  The second application was denied originally and on reconsideration.  (Tr. 185, 191, 194, 449, 454.)  Because the claims from the second application were duplicative of the first application, the ALJ consolidated the claims after the Appeals Council remanded the first application.  (Tr. 15.)

On remand, the ALJ held a hearing on January 23, 2008, and a supplemental hearing on March 27, 2008.  (Tr. 716-792.)  The ALJ took testimony from Plaintiff, two medical experts, and a vocational expert.  (*See id.*)  Plaintiff was represented by counsel at each hearing.  (Tr. 716, 760.)  During the 2005 and 2008 hearings Plaintiff testified that he was unable to work due to severe back, neck, and shoulder pain which arose from an auto accident in 2001, and that he had difficulty holding onto things.  (Tr. 697, 698, 720.)  Plaintiff further stated he suffers from depression and anxiety, has difficulty sleeping, and has thoughts of suicide one to two times a week.  (Tr. 703, 722, 727, 729.)

2

The first medical expert, Dr. Alfred Jonas, opined on Plaintiff's mental health condition. (Tr. 733-758.)  The second medical expert, Dr. John Axline, opined on Plaintiff's physical condition. (Tr. 763-778.) Finally, the ALJ also took testimony from Jeffrey Carlisle, a vocational expert.  (Tr. 781-792.)

Before the ALJ were medical records outlining Plaintiff's medical history.  By his decision of April 24, 2008, the ALJ determined that Plaintiff suffered from severe impairments of lumbar and cervical degenerative disc disease, tension headaches, right shoulder strain, angina, depression, alcohol dependence, and cannabis dependence. (Tr. 18.) Despite these impairments the ALJ found in view of the record before him that Plaintiff had the residual functional capacity to perform "light work," reduced by numerous limitations.  (Tr. 18, 19, 27.)  Upon this finding, the ALJ concluded that Plaintiff could not perform his past relevant work.  (Tr. 26.) But the ALJ found a significant number of jobs were available to Plaintiff in the local and national economy considering his age, education, work experience, and residual functional capacity, based upon a hypothetical posed to the vocational expert, Dr. Carlisle. (Tr. 27.)  Therefore, the ALJ found Plaintiff not disabled.  (Tr. 27-28.)

The Appeals Council denied Plaintiff's request for review (Tr. 7) and Plaintiff subsequently filed this action (Dkt. No. 1).  Before filing his Memorandum opposing the Commissioner's decision, Plaintiff filed a Motion for Remand Pursuant to Sentence Six of 42 U.S.C. § 405(g) asserting that this case should be remanded to the Commissioner in light of new evidence obtained after the ALJ's decision, which was not presented at the administrative level. (Dkt. No. 15.)  The Court denied that Motion.  (Dkt. No. 21.)  Plaintiff subsequently filed his

3

Memorandum appealing the decision of the Commissioner (Dkt. No. 23) and the Commissioner filed his Memorandum supporting the Commissioner's decision (Dkt. No. 24).

**II.**

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id*. § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See id*. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 1035 (2005).  The Commissioner must apply the correct law and demonstrate that he has done so.  While the court reviews the Commissioner's decision with deference to the factual

4

findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).[2]  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963).   Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The ALJ, in part, decided Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims.  *See* 20 C.F.R. §§ 404.1501, *et seq.*  These Regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment, but may not be severe enough to prevent him from engaging in other substantial gainful activity.  In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled.  These factors are

---

[2]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." *Id.* § 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. *Id.* § 404.1569. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. *Id.* § 404.1569a.

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)

### III.

Plaintiff raises several issues on this appeal. Specifically, Plaintiff states that the Commissioner erred:

(1) by failing to pose a complete hypothetical question to the VE incorporating all of Plaintiff's severe impairments;

(2) by failing to give proper weight to Plaintiff's treating physicians;

(3) by failing to find Plaintiff's subjective complaints not fully credible;

(4) by demonstrating bias in suggesting that Plaintiff was sent to Dr. Jones by Dr. Greenfield upon prompting by Plaintiff's; and

(5) by finding that Plaintiff could perform substantial gainful activity eight hours a day, five days a week. (Dkt. No. 23.)

For the reasons discussed below, none of the contentions warrant reversal.

### A.     Whether the ALJ Posed a Proper Hypothetical.

Plaintiff contends that the ALJ failed to give a complete hypothetical to the VE at the March 27, 2008, hearing.  (Dkt. No. 23 at 2-5.)  Plaintiff argues that the residual functional capacity accorded to Plaintiff in his decision is not the same residual functional capacity used by the VE.   Additionally, Plaintiff argues that the ALJ found Plaintiff had severe impairments relating to his headaches, angina, and right shoulder strain, but that the hypothetical posed to the VE did not reflect limitations associated with those impairments.

"In a disability determination, once a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Jones v. Apfel*, 190 F.3d 1224, 1228-29 (11th Cir. 1999) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  While often the Commissioner meets this burden by relying on the grids, "[w]hen the claimant cannot perform a full range of work at a given level of exertion or the claimant has non-exertional impairments that significantly limit basic work skills, exclusive reliance on the grids is inappropriate." *Id*. "In such cases, the Commissioner's preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a VE." *Id*. In these instances, "[i]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id*. (*citing McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

Plaintiff correctly points out that the residual functional capacity ("RFC") provided to the VE at the hearing did not specifically include the limitations of "frequent exposure to

7

unprotected heights, moving machinery, operating a motor vehicle, humidity and wetness, dust, fumes, and pulmonary irritants, extremes of cold and heat, and vibration." However, these environmental limitations were included as part of Plaintiff's RFC in the ALJ's decision. (Tr. 19.) The ALJ did state to the VE during the hearing, that the hypothetical individual had "*no significant* environmental limitations." (Tr. 785.) (emphasis added.) It is noteworthy to the Court that the ALJ did not say the hypothetical individual had no environmental limitations whatsoever, but stated that there were *no significant* environmental limitations. Thus, the Court finds that the VE implicitly surmised from the ALJ's instructions that the hypothetical individual could tolerate at least frequent exposure to environmental conditions, but not constant exposure.

Additionally, upon review of the Dictionary of Occupational Titles, the Court finds that none of the occupations that the ALJ found Plaintiff could perform require that an individual must be able to tolerate more than frequent exposure for any particular environmental condition.[3] Accordingly, even if the Court were to assume that it was err for the ALJ not to specifically state that the hypothetical individual could tolerate frequent exposure, such err was harmless in this instance as the Dictionary of Occupational Titles reveals the occupations provided by the VE do not require more than frequent exposure to environmental limitations. *Cf. Camarillo-Ngo v. Astrue*, No. 3:08-cv-500, 2010 WL 1257474, at *9 (M.D. Fla. Mar. 29, 2010) (finding harmless err where the ALJ did not expressly direct the VE to assume hypothetical individual had to avoid jobs requiring interaction with the public, because the representative occupations offered by the

---

[3] *See* DICOT § 706.687-010, 1991 WL 679074 (assembler, production) (4th ed. Rev. 1991); DICOT § 920.587-018, 1991 WL 687916 (packager, hand) (4th ed. Rev. 1991); DICOT § 619.381-010, 1991 WL 685177 (inspector) (4th ed. Rev. 1991).

VE did not require significant interaction with crowds or the general public under the Dictionary of Occupational Titles).

Similarly, Plaintiff argues that the ALJ erred because he did not include in his hypothetical to the VE that Plaintiff had "mild to moderate difficulties in maintaining concentration, persistence, or pace." Mental limitations such as concentration, persistence, and pace, are generally considered as part of the psychiatric review technique described in 20 C.F.R. §§ 404.1520a and 416.920a, in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. *See* SSR 96-8p. As SSR 96-8p clarifies, "[t]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria *are not an RFC assessment* but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p (emphasis added). Thus, because the mental limitations of concentration, persistence, and pace are considered as part of the "paragraph B" criteria, the Court finds that the ALJ was not required to include those specific limitations in his hypothetical to the VE since they are not part of Plaintiff's RFC. *See Martino v. Barnhart*, No. 01-17085, 2002 WL 32881075, at *2 (11th Cir. Sept. 27, 2002) (holding that an ALJ is not required to incorporate the "paragraph B" criteria in their RFC).

The ALJ was required to consider the "paragraph B" criteria when he developed Plaintiff's RFC, as the ALJ is required to consider all of Plaintiff's impairments. In that regard, the Court finds that the ALJ properly accounted for Plaintiff's mild to moderate limitations in maintaining concentration, persistence, or pace. The category of concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long enough

9

to permit the timely and appropriate completion of tasks commonly found in work settings.  20 C.F.R. § 404, Subpt. P, App. 1.  Here, the ALJ gave a hypothetical that included mild limitations of understanding and remembering and carrying out complex instructions, and mild to moderate limitations in the ability to make judgments and complex work related decisions.  (Tr. 786.) Additionally, the ALJ included mild limitations to changes in a routine work setting.  (*Id.*)  These functional limitations adequately accounted for Plaintiff's mild to moderate limitations in maintaining concentration, persistence, or pace.  *See* 20 C.F.R. § 404, Subpt. P, App. 1 ("An assessment of [the claimant's] RFC complements the functional evaluation necessary for paragraphs B and C of the listings"); *see also Wright v. Astrue*, No. 5:07-cv-280, 2008 WL 4058864, at *6 (M.D. Fla. Aug. 27, 2008) (finding that ALJ took into account moderate limitations of claimant's ability to maintain concentration, persistence, and pace by including functional equivalent of those findings in the hypothetical).

Moreover, the VE testified that the occupations he provided were "simple, repetitive, one to three-step jobs." (Tr. 791.)  By limiting Plaintiff to simple and repetitive jobs, the Court finds Plaintiff's mental limitations were adequately considered and accounted for in the ALJ's hypothetical question.  *Cf. Camarillo-Ngo*, 2010 WL 1257474, at *7-9 (holding that ALJ adequately accounted for claimant's moderate limitations in areas of concentration, persistence, and pace by restricting claimant to low stress entry-level work).

Finally, Plaintiff contends that the ALJ erred by not including limitations in his hypothetical associated with Plaintiff's headaches, angina, and right shoulder strain, which were identified by the ALJ as severe impairments.  The Court finds this argument without merit.  The

ALJ "[is] not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d. 1155, 1161 (11th Cir. 2004). Here, the decision reflects that the ALJ found Plaintiff's impairments of headaches, angina, and shoulder pain had essentially resolved or were of short duration. The ALJ noted that there were no continuing problems with Plaintiff's shoulder reported to Dr. Greenfield, and Dr. Axline confirmed that medical records showed no neurological abnormality. (Tr. 22.) The ALJ also found that the medical records did not reflect continuing complaints or findings related to Plaintiff's headaches, and that Plaintiff consistently denied having headaches or vision problems to Dr. Greenfield. (*Id.*) Finally, the ALJ stated that Plaintiff consistently denied experiencing chest pain to Dr. Greenfield, and noted a lack of medical evidence confirming the presence of any continuing cardiac impairment *or any additional limitation of function* due to cardiac symptoms. (Tr. 22, 661, 664, 668, 668, 674, 677.) (emphasis added.) Thus, although the ALJ found at Step 2 of the evaluation process that Plaintiff had severe impairments related to headaches, angina, and right shoulder strain, in later determining Plaintiff's RFC those impairments did not necessarily warrant functional limitations beyond those that he imposed simply because they were deemed "severe." Indeed, in formulating an RFC the ALJ must consider all of a claimant's medically determinable impairments, including those that are not "severe." 20 C.F.R. § 404.1545(a)(2). Here, the ALJ found based on the record before him that Plaintiff's impairments related to his headaches, angina, and right shoulder strain, did not warrant further functional limitations than those he provided for in Plaintiff's RFC. Accordingly, the hypothetical posed by the ALJ to the VE was complete because it properly included all of Plaintiff's limitations resulting from

11

Plaintiff's impairments, and therefore the Court finds no err in the ALJ's RFC determination on this ground.

### B. Whether the ALJ Accorded Plaintiff's Treating Physicians Proper Weight.

Plaintiff next argues that the ALJ erred in weighing the opinions of Plaintiff's treating physician, Dr. Greenfield, and Plaintiff's examining psychiatrist, Dr. Jones. (Dkt. No. 23 at 5-9.)

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor*, 786 F.2d at 1053. Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (*citing Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. *MacGregor*, at 1053.

12

### 1.      The Opinions of Dr. Greenfield.

The ALJ accorded "little weight" to the opinions of Plaintiff's treating physician, Dr. Greenfield.  (Tr. 24.)  The ALJ stated that Dr. Greenfield's opinions were not supported by Dr. Greenfield's own treatment notes or the other medical evidence of record.  (*Id.*)  For the reasons explained below, the Court finds that the ALJ provided sufficient reasons to establish good cause for discounting the opinions of Dr. Greenfield.

First, the ALJ found that Dr. Greenfield's opinion from the March 2005, medical source statement was not supported by his treatment notes or MRI studies.  (Tr. 24.)  Dr. Greenfield opined in the medical source statement of March 2005, that Plaintiff could only lift ten pounds for 15 minutes per work-day, could stand or walk for only three minutes per work-day, and could sit for only 1-2 hours per work-day.[4]  (Tr. 332-33.)  Additionally, the ALJ imposed postural and environmental limitations, but noted no limitations on Plaintiff's ability to reach, handle, feel, push, or pull.  (Tr. 333.)

Treatment notes reflect that Dr. Greenfield saw Plaintiff beginning in March 2003.  (Tr. 256-59.)  At that time, Plaintiff complained of headaches, with pain in his neck, lower back, and left shoulder.  (Tr. 256.)  Plaintiff denied vision problems, chest pain, and alcohol use.  (*Id.*)  Upon initial examination, Dr. Greenfield noted full range of motion in the thoracic region with tenderness, moderate decreased range of motion of the cervical with spasm and tenderness, moderate decreased range of motion of the lumbar with spasm and tenderness, and decreased range of motion with tenderness in the left shoulder.  (Tr. 257-58.)  However, Plaintiff also had

---

[4] Dr. Greenfield initially remarked in the medical source statement that Plaintiff's ability to sit was not affected by his impairments.  (Tr. 332.)

13

a fluid gait, full squat, negative straight and seated leg raise tests, +5/5 muscle strength, no motor

or sensory deficits, and a full range of motion in other extremities.  (Tr. 257.)  Thereafter,

treatment notes through March 2005 had similar findings, except that Plaintiff's range of motion

in the cervical and lumbar regions improved to only a mild decrease in range of motion, with no

other notes made concerning Plaintiff's left shoulder.  (Tr. 230-255, 363-67, 374-77.)  Indeed, a

treatment note from March 2004, indicated that Plaintiff was "stable with meds and therapies."

(Tr. 234.)

MRI studies from August 2003, revealed mild spondylosis in the cervical, lumbar, and

thoracic spine.  (Tr. 197-98.)  An MRI report from May 2003, also revealed minor degenerative

disc narrowing at L5-S1 and mild spondylolisthesis in the lumbar spine.  (Tr. 200.)  Dr.

Giannakopoulos saw Plaintiff in April and June 2003, and noted that MRI scans  from January

2003, showed a minor disc bulge and small disc herniation in the cervical spine, grade I

spondylolisthesis of the lumbosacral spine, and advanced degenerative disc disease at L5-S1. (Tr.

205-06.)  Upon examination in April 2003, Dr. Giannakopoulos found no evidence of weakness

during a motor exam, and noted no sensory deficits.  (Tr. 206.)  It was also noted that Plaintiff

was performing construction work and that such heavy duty physical work did not help Plaintiff's

condition.  (Tr. 206-07.)  At a follow up appointment in June 2003, Plaintiff had no new

complaints, and it was noted that flexion-extension films showed mild spondylolisthesis at L4 and

L5. (Tr. 199.)  Additionally, Dr. Fernandez, Plaintiff's chiropractor, saw Plaintiff from October

2002 through August 2003.  (Tr. 23, 202-204, 334-62.) Dr. Fernandez opined in March 2003, that

Plaintiff could lift 20-50 pounds, walk/stand for 4-6 hours, sit for 4-6 hours, and drive for 3-4

hours, but could not perform repetitive pushing, pulling, bending, or overhead reaching.[5]  (Tr. 208.)

The Court finds that the ALJ did not err in holding that Dr. Greenfield's March 2005, assessment was not supported by his own treatment notes or other medical evidence of record. His opinion was not bolstered by the evidence, as Dr. Giannakopoulos did not impose any restrictions on Plaintiff, and Dr. Fernandez also did not recommend such severe restrictions. Most significantly, Dr. Greenfield's own treatment notes and the MRI studies did not support such severe limitations, nor do the treatment notes reflect any limitations imposed on Plaintiff by Dr. Greenfield.

In July 2006, Dr. Greenfield later opined (in response to a checklist questionnaire from Plaintiff's counsel) that Plaintiff had problems with his hands and arms, and that Plaintiff had a severe sleeping problem potentially based upon depression.  (Tr. 421-22, 430.)  The ALJ found that the restrictions pertaining to Plaintiff's hands and arms were also unsupported by the evidence. (Tr. 24.)  The Court finds no err in this determination.  Dr. Greenfield's treatment notes reflect no abnormalities in Plaintiff's upper extremities other than decreased range of motion pertaining to Plaintiff's left shoulder, noted one time in March 2003.  (Tr. 257.)  Thereafter, treatment notes consistently showed full range of motion in Plaintiff's extremities, +5/5 muscle strength, and no motor or sensory deficits.  The ALJ noted that Plaintiff complained of right shoulder pain also, however that injury arose from a second car accident in July 2007, well after Dr. Greenfield opined that Plaintiff had limitations in his hands and arms.  Thus, that alleged

[5]  This opinion was given little weight by the ALJ due to the limited treatment period. (Tr. 23.)

15

impairment could not support Dr. Greenfield's opinion from July 2006.  Additionally, the ALJ pointed to Dr. Greenfield's November 2006, consultative examination which revealed that Plaintiff had: no problems with his grip or fine manipulation; no problems with his upper extremities; a normal gait; negative straight and seated leg raising tests; no motor or sensory deficits; full squat; and essentially full range of motion except for some decreased range of motion in the cervical and lumbar spine.  (Tr. 569-74.)  The ALJ found that there were no limitations on lifting or exposure to environmental factors noted by Dr. Greenfield, and that the examination report contradicted Dr. Greenfield's earlier opinions.  The Court finds for the above-stated reasons that the ALJ provided good cause to discount Dr. Greenfield's assessment of July 2006.

Finally, the ALJ also found that Dr. Greenfield's statements from the January and March 2008, checklist questionnaires (Tr. 654-57) were not supported by the record or Dr. Greenfield's treatment notes.  Again, the Court finds that the ALJ provided good cause to reject those opinions.  In January 2008, Dr. Greenfield opined that Plaintiff had angina and that the condition precluded him from performing substantial gainful activity, and that the condition would require unscheduled rest breaks, which would also precluding Plaintiff from working.  (Tr. 656-57.)  In March 2008, Dr. Greenfield stated that a second motor vehicle accident Plaintiff was involved in likely aggravated his back impairments.  (Tr. 655.)

With respect to Plaintiff's angina, the ALJ stated that one abnormal stress test did not support Dr. Greenfield's conclusion that Plaintiff was precluded from working.  (Tr. 24.)  The ALJ noted that no examination findings during that time showed any cardiac or additional

16

musculoskeletal abnormalities. (Tr. 24-25.) An abnormal stress study conducted on December 4, 2007, was terminated due to chest pain and ST segment abnormalities. (Tr. 658.) Plaintiff also complained of chest pain in 2003, but an examination ruled out myocardial infarction and stress testing was negative. (Tr. 20, 213-220.) Further, as the ALJ noted, treatment notes by Dr. Greenfield consistently reflected that Plaintiff denied chest pain or shortness of breath through October 2007. (Tr. 22, 234, 238, 241, 245, 248, 252, 256, 661, 664, 668, 668, 674, 677.) The ALJ additionally noted that there was no subsequent medical evidence to confirm the presence of any continuing cardiac impairment. (Tr. 22.) Dr. Greenfield's consultative examination in November 2006, also revealed no cardiac abnormalities. (Tr. 569-70.) Thus, although Plaintiff had an abnormal stress test, Dr. Greenfield's own records and findings concerning Plaintiff's angina did not support a finding that Plaintiff was disabled.

Treatment notes reflect a second motor vehicle accident in July 2007. (Tr. 677.) After the accident, Plaintiff complained of back pain, and also complained of pain in his right shoulder. (*Id.*) However, the ALJ found that Dr. Greenfield's records and findings did not support additional limitations due to Plaintiff's second car accident. (Tr. 661-79.) Plaintiff complained of right shoulder pain after the accident in July 2007, through October 2007, but there are no other records concerning that impairment beyond that time-frame.[6] Additionally, treatment notes reflected no new findings concerning Plaintiff's back pain, noting only the same decreased range of motion in the lumbar and cervical spine, reported previously. Otherwise, Plaintiff continued to have no motor or sensory deficits, negative straight and seated leg raise tests, +5/5 strength in

---

[6] The Court also notes that Dr. Greenfield made no mention of Plaintiff's right shoulder impairment in the January and March 2008, checklist questionnaires. (Tr. 654-57.)

the extremities, and full range of motion in the other extremities.  Therefore, the Court finds the ALJ provided good cause to discount Dr. Greenfield's opinions in the January and March 2008, checklist questionnaires, by citing the inconsistencies between those opinions and Dr. Greenfield's treatment records and the medical evidence (or lack thereof).

### 1.      The Opinions of Dr. Jones.

The ALJ accorded "little weight" to the opinions of Plaintiff's examining psychiatrist, Dr. Jones.  (Tr. 24.)  The ALJ stated that Dr. Jones' opinions were not supported by the medical record and that his findings were not supported by his observations of Plaintiff.  (Tr. 25-26.)  For the reasons explained below, the Court finds that the ALJ provided sufficient reasons to establish good cause for discounting the opinions of Dr. Jones.

Dr. Jones first evaluated Plaintiff in June 2006.  (Tr. 423-25.)  Plaintiff reported having suicidal thoughts, being diagnosed with schizophrenia, but not having any mental health treatment.  (Tr. 424.)  Dr. Jones observed that Plaintiff had: limited motor activity; a restricted affect; clear and coherent thought processes; orientation in all spheres; limited insight and judgment; average intelligence; fair motivation; intact memory; and intact cognitive functions.  (*Id.*)  Dr. Jones found that Plaintiff had serious impairments related to social functioning (a Global Assessment of Functioning score of 50), and scored a 48 on a Beck inventory test suggesting severe depression.[7]  (Tr. 424-25.)  On a July 2006 mental RFC assessment, Dr. Jones

---

[7]  The Global Assessment of Functioning scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV-TR) 34 (4th ed., text rev. 2000). A rating of 41-50 reflects "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." *Id.* at 32.

rated Plaintiff as markedly impaired on almost every category relating to understanding and memory, concentration and persistence, social interaction, and adaptation.  (Tr. 426-27.)  Dr. Jones concluded that Plaintiff was totally disabled.  (Tr. 425.)

Dr. Jones evaluated Plaintiff again in April 2007, which revealed essentially the same observations and findings.  (Tr. 437-39.)  Dr. Jones stated that Plaintiff was severely depressed and needed psychiatric intervention and medication.  (Tr. 439.)  On a May 2007 mental RFC assessment, Dr. Jones again rated Plaintiff as markedly impaired on almost every category relating to understanding and memory, concentration and persistence, social interaction, and adaptation. (Tr. 443-44.) Dr. Jones again concluded that Plaintiff was totally disabled.  (Tr. 439.)

The ALJ found that Dr. Jones' opinions were not supported by the medical evidence, and that Dr. Jones' observations did not support such severe limitations.  Dr. Jonas, a medical expert who reviewed the entire medical file and testified at the second hearing, also concluded that Dr. Jones' findings were unsupported.  (Tr. 738-58.)  The ALJ and Dr. Jonas referred to Dr. Kanakis' evaluation of July 2004, where although Plaintiff reported being depressed, no signs of depression were observed by Dr. Kanakis, and Plaintiff denied all major psychological symptomotology.  (Tr. 290.)  Additionally, Plaintiff denied any history of psychiatric hospitalization or having been prescribed psychiatric medication, and reported taking Elavil "for sleep."  (*Id.*)  Dr. Kanakis noted that Plaintiff had: average intelligence; an intact memory; fair attention and concentration; orientation in all spheres; and poor insight and judgment.  (*Id.*)  Dr. Kanakis diagnosed only alcohol and cannabis dependence, and concluded that Plaintiff needed detox and substance abuse treatment.  (Tr 291.)

Other medical records also do not support Dr. Jones' findings as noted by Dr. Jonas and the ALJ.  First, there is a lack of any evidence to support that Plaintiff was ever diagnosed with schizophrenia, and Plaintiff denied to other physicians that he had a history of mental health problems, other than substance abuse.  Dr. Greenfield's checklist response indicated he prescribed Elavil for Plaintiff's sleeping problem which he "felt [] may be based upon depression" and subsequently referred Plaintiff to a psychiatrist.  (Tr. 430.)  However, neither Dr. Greenfield's treatment notes nor his consultative examination of November 2006, indicate any significant mental health problems reported by Plaintiff (Tr. 230-58, 363-67, 374-77, 608-10, 618-24, 661-79).  (*But see* Tr. 605-07) (reporting complaint of anxiety and Psych and Neuro categories marked in notes from January to March 2007).  Plaintiff's other medical records also reveal that Plaintiff was consistently oriented in all spheres and had a normal mood/affect.  (Tr. 206, 213, 217, 226, 227, 228, 312, 314, 320.)

Finally, the ALJ and Dr. Jonas found that Dr. Jones' examination did not support the severe limitations set forth in Dr. Jones' mental RFC assessments.  Dr. Jonas stated that although Dr. Jones diagnosed Plaintiff with chronic and severe depression, his observations did not support that diagnosis, and that Dr. Jones overstated the impairments.  (Tr. 742, 748.)  For example, although Dr. Jones observed Plaintiff's memory to be intact with normal cognitive functions in each of the examinations, he found marked limitations relating to understanding and memory in two of three categories.  (Tr. 25, 426-27, 443-44.)  Additionally, the ALJ found that the reports of Dr. Jones noting a history of suicide attempt and self-mutilation were totally inconsistent with

20

the other evidence of record.[8]  (Tr. 23.)  The ALJ further noted that even after severe limitations were found by Dr. Jones, Plaintiff received no further mental health treatment, and Dr. Greenfield noted no abnormalities on multiple follow-up examinations.  (Tr. 25-26.)  Thus, the ALJ concluded that Dr. Jones' opinions were not supported by the medical evidence of record, and were inconsistent with his own findings.  The Court finds the ALJ provided good cause for discounting Dr. Jones' opinions, and that there was no err in giving little weight to those opinions.

### C.    Whether the ALJ Properly Weighed the Credibility of Plaintiff.

Plaintiff further contends that the ALJ did not properly attribute the objective medical evidence when he determined Plaintiff's credibility.  (Dkt. No. 23 at 10-11.)

The Court finds that the ALJ gave sufficient consideration to Plaintiff's subjective complaints in arriving at his decision.  When a claimant alleges disability through subjective complaints of pain or other symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*citing Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.  1991)).  If the law judge discounts the plaintiff's testimony concerning subjective complaints, he must articulate explicit and adequate reasons for doing so.  *Id.*  "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious

---

[8]  For instance, Plaintiff denied suicidal thoughts and suicide attempts to Dr. Kanakis. (Tr. 290.)

to the reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (*quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983)).

The ALJ specifically cited to Eleventh Circuit case law regarding the pain standard, and properly applied the pain standard test in considering Plaintiff's subjective complaints regarding his alleged physical impairments, and his determination is supported by substantial evidence. (Tr. 19-23.) The ALJ first found that Plaintiff met the first prong of the pain standard test because the medically determinable impairments could reasonably be expected to produce the alleged symptoms. (Tr. 19.) However, the ALJ then found that the objective medical evidence did not confirm the severity of the alleged pain, or the alleged functional limitations, arising from the Plaintiff's alleged impairments. (*Id.*) In reaching this conclusion, the ALJ considered Plaintiff's subjective complaints and adequately explained his reasons for not fully crediting those complaints. Moreover, the ALJ took into account Plaintiff's limitations in determining Plaintiff's residual functional capacity.

The ALJ articulated several reasons in determining that Plaintiff was not fully credible in his allegations. The ALJ first pointed to the fact that Plaintiff was still able to perform some work activity after the alleged onset date of June 2002. (Tr. 23.) Indeed, medical records reveal that Plaintiff was doing construction work in April 2003. (Tr. 23, 206-07.) And although Plaintiff reported not being able to do household chores in July 2004 (Tr. 123-24), he reported in September 2006, being able to mow the lawn, drive a car, go shopping, handle finances, watch television, and spend time with others (Tr. 23, 486, 487, 489). Additionally, Plaintiff was described as being non-compliant with medical treatment by Dr. Jones, and consistently denied

22

alcohol use while being prescribed medications by Dr. Greenfield.[9]  (Tr. 23, 438.)  Plaintiff's

failure to comply with a treatment regimen is a proper factor in assessing his credibility.  *See*

*Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

Additionally, the ALJ noted several inconsistencies in the complaints by Plaintiff

concerning his headaches, chest pain, and vision problems.  (Tr. 22.)  Moreover, the objective

medical evidence as already described herein, (i.e., the MRIs, treatment notes and objective

findings by Dr. Greenfield, Dr. Giannakopoulos, Dr. Fernandez, Dr. Kanakis, and Dr. Jones), do

not support Plaintiff's claims of total disability.

In conclusion, the Court finds that the ALJ properly articulated his reasons for

discounting Plaintiff's subjective complaints concerning his pain and alleged functional

limitations relating to his alleged impairments.  The principle that, under the substantial evidence

test, findings of fact may be reversed only when the record compels a reversal equally applies to

credibility determinations.  Here, the record does not compel a reversal as to the ALJ's credibility

determination of Plaintiff.

**D.     Whether the ALJ Demonstrated Bias.**

Plaintiff alleges that the ALJ showed bias by allegedly suggesting that Plaintiff was sent

to Dr. Jones by Dr. Greenfield upon prompting by Plaintiff's counsel.  (Dkt. No. 23 at 11-12; Tr.

21, 25.)  Plaintiff argues that the ALJ's alleged bias improperly influenced the weight given to

Dr. Jones' opinions by the ALJ, citing *Miles v. Chater*, 84 F.3d 1397 (11th Cir. 1996), in support

of his argument.

---

[9]  As the ALJ noted, hospital records and the reports of Dr. Kanakis and Dr. Jones
reflect continued alcohol and marijuana abuse by Plaintiff.  (Tr. 23.)

Plaintiff fails to cite to the record to support his claim of bias, however the ALJ's decision contains two statements referring to Plaintiff's attorney and Dr. Jones, which state the following:

> In June 2006 and April 2007, the claimant was evaluated by psychiatrist Dr. Karl Jones. The claimant's representative reported that the claimant was referred to Dr. Jones by treating physician Dr. Greenfield, however, there is no documentation of such referral in the treatment notes and Dr. Jones did not provide any treatment. (Tr. 21.)

> On prompting by the claimant's representative, treating physician Dr. Greenfield indicated on the July 2006 checklist that he had referred the claimant for psychiatric evaluation for possible depression. The claimant's representative subsequently sent the claimant to Dr. Jones. (Tr. 25.)

In *Miles*, the Eleventh Circuit found that an ALJ demonstrated bias by making several improper remarks in his decision about the fact that the claimant's attorney sent the claimant to particular physicians. In that case, the ALJ remarked that the doctor's examinations for the claimant's attorney "almost invariably conclude that the person being examined is totally disabled." *Miles*, 84 F.3d at 1399. The ALJ further stated that the doctor "concluded (as he usually does) that [the claimant] was totally disabled." *Id.* at 1399 n.4. The Eleventh Circuit held that these statements demonstrated bias on the part of the ALJ and therefore remanded the case. *Id.* at 1401.

Here, the ALJ made no derogatory comments regarding the fact that Plaintiff's attorney may have sent Plaintiff to Dr. Jones. Nor does the Court find that the ALJ's comments evince a sentiment that Dr. Jones' opinions were due less weight because Plaintiff was allegedly sent to Dr. Jones by Plaintiff's attorney. The ALJ's first statement (Tr. 21) simply reflects the fact that treatment records did not show a referral by Dr. Greenfield for Plaintiff to see Dr. Jones for

24

treatment.  Additionally, the ALJ's statement that Dr. Jones did not provide treatment is in accord with Plaintiff's testimony in which he admitted that he was not treated by Dr. Jones on a regular basis, but only saw him on two occasions which were approximately a year apart.[10]  (Tr. 723-24.)

The first sentence in the second statement (Tr. 25) simply reports a fact: Plaintiff's attorney sent Dr. Greenfield a checklist questionnaire in June 2006, which Dr. Greenfield filled out in July 2006, indicating that he referred Plaintiff to a psychiatrist for evaluation of Plaintiff's depression.[11]  The Court finds that the next sentence stating that the "claimant's representative subsequently sent the claimant to Dr. Jones" is at most superfluous, and taken in context amounts to no more than a transition sentence.  The statement is possibly inconsistent with the record as Plaintiff testified at the January 23, 2008, hearing that Dr. Greenfield sent him to Dr. Jones.[12,13]  (Tr. 724.)  Thus, the ALJ may have been mistaken as to who sent Plaintiff to Dr. Jones, however

---

[10]  *See also* 20 C.F.R. § 404.1527(d)(2)(I) (stating that the length of the treatment relationship and the frequency of examination is a proper consideration in weighing a treating source's opinion).

[11]  The Court notes that Dr. Greenfield did not identify who that psychiatrist was, or when exactly he made the referral.  (Tr. 421-22, 430-31.)

[12]  Additionally, the Court notes that the checklist questionnaire was sent to Dr. Greenfield on June 28, 2006, *after* Plaintiff had already been evaluated by Dr. Jones on June 27, 2006.  Thus, Plaintiff technically could have only "subsequently" been evaluated by Dr. Jones in April 2007.

[13]  If the ALJ had stated that Plaintiff was sent to Dr. Jones only upon the attorney's request, Plaintiff's argument would possibly have some force because such a statement would discount the fact that Plaintiff sought mental treatment on the recommendation of his treating physician, Dr. Greenfield.  That is not the case here though.  The ALJ credited the fact that Dr. Greenfield referred Plaintiff for psychiatric evaluation.  However, the records do not show that Dr. Greenfield sent Plaintiff to see Dr. Jones, specifically.  Moreover, the evidence of record does not reflect that Plaintiff saw Dr. Jones on a treating basis.

25

the Court finds that this possible misstatement is of no consequence because it is clear from the record that the ALJ acknowledged that Dr. Greenfield referred Plaintiff for psychiatric evaluation, and moreover, it is clear from the record that the ALJ's reasons for discrediting Dr. Jones' opinions were not founded on who sent Plaintiff to see Dr. Jones.  Upon review of the transcript from the hearing of January 23, 2008, it appears that the ALJ was not particularly concerned who sent Plaintiff to see Dr. Jones. (Tr. 723-24.) Rather, the ALJ was more concerned as to the nature and extent of the treating relationship between Dr. Jones and Plaintiff, which is an appropriate consideration in weighing a treating source's credibility.  *See* 20 C.F.R. § 404.1527(d)(2)(ii).[14] Indeed, the Court notes that at the hearing it was Plaintiff's attorney who asked who sent Plaintiff to Dr. Jones, and not the ALJ.  (Tr. 724.)

The ALJ is "duty-bound to develop a full and fair record, [and] must carefully weigh the evidence, giving individualized consideration to each claim that comes before him . . . The impartiality of the ALJ is thus integral to the integrity of the system."  *Miles*, 84 F.3d at 1401 (citations omitted).  The Court finds that the ALJ's statements referring to Plaintiff's attorney and Dr. Jones were rather innocuous, and do not demonstrate bias on the part of the ALJ in a way that affected Plaintiff's due process rights.  Therefore, the Court finds Plaintiff's argument on this ground does not warrant reversal.  *Cf. Schiano v. Astrue*, No. 07-61920-CIV, 2009 WL 1770152,

---

[14]  For example, the ALJ asked Plaintiff if Dr. Jones prescribed medication to Plaintiff. (Tr. 724.)  Plaintiff replied in the negative, but that he assumed Dr. Greenfield and Dr. Jones were communicating with one another.  (*Id.*)  This is significant because it first supports the finding that there was not a treating relationship between Dr. Jones and Plaintiff.  Rather, Dr. Jones was a two-time examining physician.  Additionally, as the ALJ noted in his decision, although Dr. Jones found many severe limitations as to Plaintiff's mental capabilities, after Plaintiff's examinations no further mental health treatment was obtained by Plaintiff and Dr. Greenfield noted no abnormalities on multiple follow-up examinations.  (Tr. 25-26.)

at *1, *24-25 (S.D. Fla. June 23, 2009) (finding no bias on the part of the ALJ who noted that the claimant was sent to a psychiatrist by his attorney); *Huhn v. Astrue*, No. 5:08-cv-16, 2009 WL 804646, at *11-12 (M.D. Fla. Mar. 26, 2009) (same).

> **E.** **Whether the ALJ Properly Determined Plaintiff Can Perform Substantial Gainful Activity on a Sustained Basis.**

Plaintiff's final argument challenges the ALJ's finding that Plaintiff could perform substantial gainful activity ("SGA") on a sustained basis.  (Dkt. No. 23 at 12-13.)  Plaintiff contends that the restrictions provided by Dr. Greenfield and Dr. Jones preclude Plaintiff from performing SGA.

The Court finds Plaintiff's argument without merit.  First, Plaintiff's argument rests on the assumption that Dr. Greenfield's and Dr. Jones' opinions were entitled to greater weight than that accorded by the ALJ.  The Court has already found that the ALJ did not err in according the opinions of those two physicians little weight.  Second, the ALJ specifically acknowledged that Plaintiff must be able to perform SGA on a sustained basis in order to be found not disabled, stating:

> An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

(Tr. 17.) Thus, contrary to Plaintiff's argument that there was absolutely no mention of the proper standard for analyzing RFC, the ALJ expressly referred to that standard and specifically cited to Social Security Ruling 96-8p.  The Court finds no err in the ALJ's RFC determination as the ALJ properly considered all of Plaintiff's impairments.  Moreover, he did not substitute his own

27

opinion for that of the medical experts.  The ALJ accorded the most weight to the opinions of medical expert witnesses Dr. Jonas and Dr. Axline, as each had the opportunity to review Plaintiff's entire medical record, and their opinions were well supported by and consistent with the medical record as a whole.  The ALJ utilized these opinions in formulating Plaintiff's RFC, which by definition is an assessment that an individual has the ability "to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p.  Therefore, the Court finds that Plaintiff's final argument also fails.

## IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence.  Accordingly, I recommend that the decision be **AFFIRMED**.

**IT IS SO REPORTED** at Tampa, Florida, this 26th day of August, 2010.

ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*


**Copies furnished to:**

Honorable Susan C. Bucklew

Counsel of Record

29